FILED
CLERK
2014 OCT 14  AM 10: 36
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
Stephen M. Ankrom (SA5375)
POWLEY & GIBSON, P.C.
304 Hudson Street – Suite 202
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085
   rlpowley@powleygibson.com
   jmgibson@powleygibson.com
   smankrom@powleygibson.com

Christopher J. Renk
Erik S. Maurer
Michael J. Harris
Katherine Laatsch Fink
Audra C. Eidem Heinze
Aaron P. Bowling
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, Illinois  60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff,
Converse Inc.

# CV 14          5996

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## BROOKLYN DIVISION

COGAN, J.

| | | |
|---|---|---|
| **CONVERSE INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. |
| | ) | |
| **ORANGE CLUBWEAR, INC.** | ) | |
| **D/B/A DEMONIA DEVIANT,** | ) | |
| | ) | |
| **Defendant.** | ) | Jury Trial Demanded |

## <u>COMPLAINT</u>

This case is about protecting Converse Inc.'s ("Converse's") trademark rights in an iconic shoe design. The shoe design at issue:

> "[was] … the ultimate insider shoe for the top athletes back in the first 50 years of its existence, and then it was the ultimate outsider shoe. But it's always been a mainstream shoe, too. It sort of represents America."

Whitney Matheson, *Converse: 100 Years Young*, USA Today, Mar. 12, 2008, at 3D (quoting Hal Peterson). Plaintiff Converse, for its complaint against Defendant Orange Clubwear, Inc. d/b/a Demonia Deviant ("Defendant"), alleges as follows:

### The Parties

1.      Converse is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at One High Street, North Andover, Massachusetts 01845. Founded in Massachusetts as the Converse Rubber Shoe Company in 1908, Converse is a leading producer of footwear, apparel, and accessories. Converse footwear appears in rock clubs, on the streets, on rappers, icons, celebrities, athletes, rebels, and originals.

2.      On October 14, 2014, Converse also requested that the United States International Trade Commission ("ITC") institute an investigation against Defendant under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on the unlawful importation into the United States, sale for importation into the United States, or sale within the United States after importation, of certain footwear products that violate Converse's rights in a registered and common law trademark used in connection with certain Converse shoes. Converse shoes bearing the trademark asserted in this matter are referred to as "Converse Shoes."

3.     On information and belief, Defendant is a corporation organized and existing under the laws of the State of California with a principal place of business at 14762 Goldenwest Street, Suite B, Westminster, CA 92683.

**Jurisdiction and Venue**

4.     This is an action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair business practices.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"), New York General Business Law §§ 133, 349, 360, and the common law of the State of New York.

5.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

6.     On information and belief, this Court may exercise personal jurisdiction over Defendant based upon its contacts with this forum, including being domiciled in this forum, regularly and intentionally doing business here, and/or committing acts giving rise to this lawsuit here.

7.     Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

**General Allegations – Converse's Asserted Trademark**

8.     Converse owns rights in the appearance of the midsole design used in connection with Converse Shoes.  Converse owns common law and federal trademark rights in the distinctive midsole design made up of a toe bumper and a toe cap, plus either an upper stripe and/or a lower stripe, including U.S. Trademark Registration No. 4,398,753 (the "Asserted Trademark").  A certified copy of the U.S. Trademark Registration Certificate for the Asserted

- 3 -

Trademark is attached as Exhibit 1. Exemplary images of the Asserted Trademark are shown in Illustration 1 below.



Illustration 1: Examples of the Asserted Trademark

9.      Converse first introduced a distinctive combination of design elements closely resembling the Asserted Trademark on "All Star" high-top sneakers in 1917. By 1932, the Asserted Trademark acquired its present-day appearance. In 1934, Converse Shoes bearing the design were eponymously renamed "Chuck Taylor" after a Converse salesman and basketball player. In 1957, Converse introduced a low top, or "oxford," version of shoes bearing the Asserted Trademark. Converse has also used the Asserted Trademark in connection with other

- 4 -

footwear products, including but not limited to, "One Star" and "Star Player" shoe models. Consumers often refer to shoes bearing the Asserted Trademark as "All Stars," "Chuck Taylors," "Chucks," or "Chuck sneakers." All told, Converse has continuously manufactured, promoted, and sold shoes bearing the Asserted Trademark for more than 80 years.

10.     Since their introduction around 1917, Converse has sold approximately one billion pairs of shoes bearing the Asserted Trademark worldwide. Converse has spent hundreds of millions of dollars advertising and promoting shoes bearing the Asserted Trademark. Converse's advertisements and promotions of the Asserted Trademark have appeared in print, on the Internet, on billboards, in videos, and at retail. Over the past two fiscal years alone, Converse has spent approximately $30 million advertising and promoting the Asserted Trademark in the United States. The Asserted Trademark is also the subject of widespread and unsolicited public attention. This publicity extends from acclaim in books, magazines, and newspapers to frequent appearances in movies and television shows. Over the last century, celebrities, professional athletes, and other prominent figures have been publicized wearing Converse Shoes bearing the Asserted Trademark.

11.     Converse has served approximately 120 cease-and-desist letters at trade shows, and served additional letters and filed federal district court lawsuits, to protect consumer perceptions and to police the Asserted Trademark.

12.     Defendants in federal district court lawsuits have entered into consent judgments admitting that the trademarks at issue in those lawsuits, including the Asserted Trademark, are "distinctive and non-functional," "well known, famous and associated with Converse, and that the goodwill appurtenant thereto belongs exclusively to Converse."

13.     Likewise, violators to whom Converse sent cease-and-desist letters entered into settlement agreements in which violators admit that the midsole design of the Asserted Trademark is well known, famous, and associated with Converse; non-functional; and valid and enforceable.

14.     As a result of more than 80 years of exclusive use of the Asserted Trademark; ubiquitous advertising, sales, and distribution of shoes bearing the Asserted Trademark; the intentional copying and recognition of Converse's rights by others; and because of the vast unsolicited and salutary publicity of the Asserted Trademark in connection with Converse, the Asserted Trademark enjoys substantial secondary meaning as a trademark connected with Converse and is, and was at all relevant times, famous among the general consuming public of the United States and in New York.

### General Allegations – Defendant's Unauthorized Activities

15.     On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises footwear products bearing confusingly similar imitations of the Asserted Trademark (the "Accused Products") that are likely to cause consumer confusion with and dilution of the famous Asserted Trademark.

16.     On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises Accused Products in competition with Converse.

17.     On information and belief, Defendant's Accused Products travel in similar channels of trade and are sold to similar consumers as Converse Shoes bearing the Asserted Trademark.

18.     On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises the Accused Products in several styles, including at least its "Deviant 101"

footwear products.   Illustration 2 below compares the Asserted Trademark to an image of a representative Accused Product.



19.   Converse owned valid rights in the Asserted Trademark, and the Asserted Trademark was famous in connection with Converse, before Defendant began selling, offering to sell, distributing, promoting, or advertising the Accused Products.

20.   Converse has never authorized Defendant to use the Asserted Trademark.

21.   On information and belief, Defendant knew of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

22.   On information and belief – and as evidenced by the facts and circumstances alleged above – Defendant has intentionally and willfully violated the Asserted Trademark.

## Count I: Trademark Infringement under Section 32(1) of the Lanham Act
### (15 U.S.C. § 1114(1))

23.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 22 above, inclusive, and incorporates them by reference herein.

24.     Defendant's offers to sell, sales, distribution, promotion, and/or advertisement of Accused Products violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

25.     Converse owns duly issued and validly subsisting rights in U.S. Trademark Registration No. 4,398,753 covering the Asserted Trademark. The Asserted Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

26.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to cause consumer confusion as to the origin, sponsorship, or approval of the Accused Products, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

27.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

28.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

29.     As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### Count II: False Designation of Origin/Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

30.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 29 above, inclusive, and incorporates them by reference herein.

31.     Defendant's offers to sell, sales, distribution, promotion, and/or advertisement of Accused Products, in competition with Converse, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32.     The Asserted Trademark is federally registered under U.S. Trademark Registration No. 4,398,753, and is entitled to protection under both federal law and common law. The Asserted Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin

and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

33.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a false designation of origin and/or unfair competition that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

34.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

35.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

36.     As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count III: Dilution under Section 43(c) of the Lanham Act 15 U.S.C. § 1125(c)

37.  Converse re-alleges each and every allegation set forth in paragraphs 1 through 36 above, inclusive, and incorporates them by reference herein.

38.  Defendant's offers to sell, sales, distribution, and/or advertisement of Accused Products violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

39.  The Asserted Trademark is federally registered under U.S. Trademark Registration No. 4,398,753, and is entitled to protection under both federal law and common law. The Asserted Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States.  Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a famous and well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

40.  Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to dilute the famous Asserted Trademark at least by eroding the public's identification of the famous Asserted Trademark with Converse and by lessening the capacity of the famous Asserted Trademark to identify and distinguish Converse products.

41.  Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark, and an erosion of the distinctiveness of the Asserted Trademark.

42.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

43.     Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count IV: Common Law Trademark Infringement and Unfair Competition

44.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 43 above, inclusive, and incorporates them by reference herein.

45.     Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, constitutes common law trademark infringement and unfair competition.

46.     The Asserted Trademark is entitled to protection under the common law of the State of New York.  The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States.  Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

47.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship of the Accused Products by

creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

48.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

49.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

50.     As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, punitive damages, costs, and reasonable attorney fees.

### Count V: Unlawful Deceptive Acts and Practices under New York General Business Law § 349

51.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 50 above, inclusive, and incorporates them by reference herein.

52.     Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, violates section 349 of New York General Business Law.

53.     The Asserted Trademark is entitled to protection under New York law. The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired

- 13 -

substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

54.    Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a deceptive act and/or practice in the conduct of Defendant's business, trade, and/or commerce, and a false designation of origin and/or unfair competition that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

55.    Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

56.    On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

- 14 -

57.     As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover actual damages, enhanced damages, punitive damages, and reasonable attorney's fees.

### Count VI: Trademark Infringement under New York General Business Law § 133

58.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 57 above, inclusive, and incorporates them by reference herein.

59.     Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, violates section 133 of New York General Business Law.

60.     The Asserted Trademark is entitled to protection under New York law.   The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States.   Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

61.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a false designation of origin and/or unfair competition that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

62.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to

- 15 -

Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

63.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional, willful, and with the intent to deceive and/or mislead the public as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

64.     As a result of Defendant's conduct, Converse is entitled to injunctive relief enjoining Defendant's conduct described above.

### Count VII: Dilution under New York General Business Law § 360-L

65.     Converse re-alleges each and every allegation set forth in paragraphs 1 through 64 above, inclusive, and incorporates them by reference herein.

66.     Defendant's offers to sell, sales, distribution, or advertisement of Accused Products violates section 360-L of New York General Business Law.

67.     The Asserted Trademark is entitled to protection under New York law.  The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States.  Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a famous and well-known indicator of the

- 16 -

origin and quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

68.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof on its Accused Products that are substantially similar to the Asserted Trademark is likely to dilute the famous Asserted Trademark at least by eroding the public's identification of the famous Asserted Trademark with Converse and by lessening the capacity of the famous Asserted Trademark to identify and distinguish Converse footwear products.

69.     Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

70.     On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the substantial and near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

71.     As a result of Defendant's conduct, Converse is entitled to injunctive relief enjoining Defendant's conduct described above.

## Jury Demand

Converse demands a trial by jury.

## Relief Sought

WHEREFORE, Converse respectfully prays for:

A.     Judgment that Defendant has (i) willfully infringed the Asserted Trademark in violation of § 1114 of Title 15 in the United States Code; (ii) willfully used false designations of origin and/or engaged in unfair competition in violation of § 1125(a) of Title 15 in the United States Code; (iii) willfully diluted the Asserted Trademark in violation of § 1125(c) of Title 15 in the United States Code; (iv) willfully infringed the Asserted Trademark and engaged in unfair competition in violation of the common law of New York; (v) willfully committed deceptive acts in violation of Section 349 of the New York General Business Law; (vi) willfully committed acts with the intent to deceive or mislead in violation of Section 133 of the New York General Business Law; and (vii) willfully diluted the Asserted Trademark in violation of Section 360 of the New York General Business Law.

B.     An injunction prohibiting Defendant and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of the Asserted Trademark, including at least from selling, offering to sell, distributing, or advertising the Accused Products, or any other products that use a copy, reproduction, and/or colorable imitation of the Asserted Trademark;

C.     An order directing the destruction of all Accused Products, or any other products that use a copy, reproduction, and/or colorable imitation of the Asserted Trademark, in Defendant's possession or control, and the destruction of all advertising materials related to the Accused Products in Defendant's possession or control, including on the Internet;

D.     An award of Defendant's non-duplicative profits, Converse's actual damages, enhanced profits and damages, punitive damages, costs, and reasonable attorney fees for

Defendant's trademark infringements and dilution, and acts of unfair competition and unfair business practices; and

      E.        Such other and further relief as this Court deems just and proper.

                                           Respectfully submitted,

Dated: October 14, 2014

                                           Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
Stephen M. Ankrom (SA5375)
POWLEY & GIBSON, P.C.
304 Hudson Street – Suite 202
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085
    rlpowley@powleygibson.com
    jmgibson@powleygibson.com
    smankrom@powleygibson.com

Christopher J. Renk
Erik S. Maurer
Michael J. Harris
Katherine Laatsch Fink
Audra C. Eidem Heinze
Aaron P. Bowling
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
    crenk@bannerwitcoff.com
    emaurer@bannerwitcoff.com
    mharris@bannerwitcoff.com
    kfink@bannerwitcoff.com
    aheinze@bannerwitcoff.com
    abowling@bannerwitcoff.com

***Attorneys for Plaintiff, Converse Inc.***

# Exhibit 1



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

September 24, 2013

THE ATTACHED U.S. TRADEMARK REGISTRATION *4,398,753* IS
CERTIFIED TO BE A TRUE COPY OF THE REGISTRATION ISSUED BY
THE UNITED STATES PATENT AND TRADEMARK OFFICE WHICH
REGISTRATION IS IN FULL FORCE AND EFFECT.

REGISTERED FOR A TERM OF *10* YEARS FROM  *September 10, 2013*
SAID RECORDS SHOW TITLE TO BE IN:  *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

T. LAWRENCE
Certifying Officer

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,398,753**

**Registered Sep. 10, 2013**

**Int. CL: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

CONVERSE INC. (DELAWARE CORPORATION)
ONE HIGH STREET
NORTH ANDOVER, MA 01845

FOR: FOOTWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 0-0-1946; IN COMMERCE 0-0-1946.

OWNER OF U.S. REG. NOS. 4,062,112 AND 4,065,482.

THE MARK CONSISTS OF THE DESIGN OF THE TWO STRIPES ON THE MIDSOLE OF THE SHOE, THE DESIGN OF THE TOE CAP, THE DESIGN OF THE MULTI-LAYERED TOE BUMPER FEATURING DIAMONDS AND LINE PATTERNS, AND THE RELATIVE POSITION OF THESE ELEMENTS TO EACH OTHER. THE BROKEN LINES SHOW THE POSITION OF THE MARK AND ARE NOT CLAIMED AS PART OF THE MARK.

SEC. 2(F).

SER. NO. 85-696,598, FILED 8-6-2012.

KIMBERLY FRYE, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

<div style="border:1px solid black">

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
### DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

</div>

**Requirements in the First Ten Years\***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

<div style="border:1px solid black">

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

</div>

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the
USPTO website for further information.  With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.