**Banner & Witcoff, Ltd.**
INTELLECTUAL PROPERTY LAW

TEN SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, ILLINOIS 60606-7407

TEL: 312.463.5000
FAX: 312.463.5001
www.bannerwitcoff.com

November 19, 2014

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *Converse Inc. v. Orange Clubwear, Inc. d/b/a Demonia Deviant*, **1:14-cv-05996-BMC**
            **Fed. R. Civ. P. 26(f) Report**

Dear Judge Cogan,

Pursuant to the Court's October 15, 2014, Order, Fed. R. Civ. P. 26(f), and in view of the parties' conference, the parties submit the following report:

I.   DESCRIPTION OF THE CASE

   A.   Converse Statement:

Converse Inc. ("Converse") filed suit against Orange Clubwear, Inc. ("Orange Clubwear") in this Court on October 14, 2014, alleging that Orange Clubwear willfully violates Converse's common law and federal trademark rights in the appearance of the midsole design used in connection with Converse Shoes, in particular, in the midsole design made up of a toe bumper and a toe cap, plus either an upper stripe and/or a lower stripe, including U.S. Trademark Registration No. 4,398,753 (collectively, the "Asserted Trademark"). On that same date, Converse also filed a complaint against Orange Clubwear and others in the United States International Trademark Commission (the "ITC"), asserting the same common law and federal trademark rights at issue in this case. On November 12, 2014, the ITC Commissioners unanimously voted to institute Investigation No. 337-TA-936 pursuant to Converse's complaint.

In its Complaint in this case, Converse alleges causes of action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair business practices, under the Trademark Act of 1946, 15 U.S.C. §§ 1114, 1125(a), and 1125(c); New York General Business Law §§ 133, 349, and 360; and the common law of the State of New York, at least in view of Orange Clubwear's sales, offers for sale, distribution, promotion, and/or advertising of footwear products bearing confusingly similar imitations of Converse's asserted trademark, including at least the "Deviant 101" footwear products.

November 19, 2014
Page 2

    The table below compares Converse's Asserted Trademark (left) to an image of a representative accused product (right). The accused products use the same midsole design covered by the Asserted Trademark, including the same combination of toe bumper texturing, as shown below.

| Exemplary Images of Converse's Asserted Trademark | Exemplary Images of Orange Clubwear's Accused Products |
|---|---|
|  | Deviant 101 |

    This Court has subject matter over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a), and the Court may exercise personal jurisdiction over Orange Clubwear based upon its contacts with this forum, including at least regularly and intentionally doing business here and committing acts giving rise to this lawsuit here.

    On October 24, 2014, counsel for Converse sent a letter to the agent authorized to receive service on behalf of Orange Clubwear, notifying Orange Clubwear of the lawsuit and requesting that Orange Clubwear waive service of the summons. If Orange Clubwear agrees to waive service, its Answer or other response to the Complaint will be due December 23, 2014.

  B.  <u>Orange Clubwear Statement:</u>

  Orange Clubwear has waived service of the summons and its Answer or other response to the Complaint will be due on December 23, 2014.  Orange Clubwear expects to move for dismissal on the grounds that  (a) this Court lacks personal jurisdiction, (b) there is no justiciable controversy between the parties, and (c) the complaint fails to allege plausible claims against it. In this regard, Orange Color disputes the validity and enforceability of the trademarks at issue, disputes that it infringes a valid trademark, and disputes plaintiff's contention that Orange Clubwear does business as Demonia Deviant. Perhaps most importantly, there is no plausible claim for infringement because Converse's registered U.S. trademark clearly requires two stripes on the mid-soul, whereas the accused infringing shoes indisputably have only one stripe. Further, under the doctrines of laches and estoppel, Converse should be precluded from asserting the trademark rights at issue here---Converse purports to have acquired the trade dress/trademark rights at issue in 1917, but it has been content for decades to allow dozens of companies to sell "look-alike" sneakers. Orange Color, further, intends to seek sanctions and other appropriate relief from the Court on the ground that the pre-trial investigation of plaintiff's counsel was inadequate and unreasonable insofar as plaintiff's complaint alleges  that (a) Orange Color does business under the name Demonia Deviant, (b) Orange Color manufactures and imports Demonia Deviant brand shoes,  (c) Orange Color has offered to sell or sold shoes that infringe a valid U.S. trademark or common law trademark, and (d) the alleged infringing shoes, which indisputably have only one stripe on the mid-soul, infringe Converse's trademark which requires clearly and indisputably requires two stripes.

  This case involves trademarks that purport to cover the design of sneakers. There is no allegation that defendant used the Converse brand name.  The sneakers at issue indisputably were sold under the brand name---Demonia Deviant.  Converse claims, however, that consumers have been confused because the design of the Demonia Devian sneakers resembles that design (or alleged trade dress) of Converse sneakers. Defendant disputes that functional sneaker designs since as those at issue here can be protected by trademarks.   But even if trademark or trade dress protection can exist for the design of a sneaker, Converse admits that it purportedly acquired common law trademark rights in the  purported shoe designs in 1917 and that it only obtained a registered U.S. trademark covering the design in 2013.  That registered trademark very clearly covers only sneakers with two stripes on the mid-soul.  For decades, Converse  has allowed dozens of  companies to make and sell sneakers that resemble what Converse now alleges is its proprietary trade dress, engaging in only sporadic efforts to enforce its alleged common law trademark rights.  By the time Converse belatedly sought and obtained a U.S. registered trademark, the design at issue (with either one stripe or two stripes) had become generic—indeed ubiquitous; it was widely used by manufacturers and retailers who sold shoes with similar "looks" under many different brand names.  Further, Converse rarely sought to enforce its alleged  trademark (trade dress) rights against these "look-alikes".

  After obtaining its registered U.S. trademark in 2013, Converse began a campaign to enforce its trademark rights against dozens of manufacturers, retailers and wholesalers.  As part of this campaign, on October 14, 2014, Converse requested that the United States International Trade Commission ("ITC") commence an investigation against Defendant and approximately 30 other companies under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. Section

1337, based on alleged unlawful importation into the United States, sale for importation, or sale in the United States after importation, of footwear products that purportedly violate Converse' common law and registered trademark rights. The ITC recently voted to initiate this investigation.

The purpose of an ITC proceedings is to target those who manufacture and import infringing products into the United States and ban importation and sale of such goods in the United States. Converse has alleged in the ITC proceeding and this case that defendant Orange Color manufactures and imports Demonia Deviant brand names into the United States---an allegation that is demonstrably false. In fact, Orange Color does not manufacture Demonia Deviant brand name sneakers and its supplier of Demonia Deviant brand footwear is a U.S. based wholesaler. Orange Color has never imported Demonia Deviant brand name shoes into the United States. Had plaintiff's counsel conducted a reasonable pre-suit investigation, it could easily have determined from a few Google searches that Orange Color (a) did not do business under the name "Demonia Deviant", (b) did not manufacturer Demonia Deviant brand shoes, (c) did not import Demonia Deviant brand shoes into the United States, and (d) did not sell or offer to sell sneakers with two stripes on the mid-soul, as required in Converse's registered U.S. trademark. A simple letter or telephone call to Orange Color would also have disabused Converse and its counsel of these obviously false allegations.

In this regard, at no time prior to instituting this action and identifying Orange Color as a respondent in the ITC proceeding did plaintiff or its counsel attempt to communicate directly with Orange Color. No cease and desist letter was sent. No notification was sent to Orange Color concerning Converse's allegations in this action. No attempt was made to communicate with Orange Color concerning the accuracy of the assertions made against it in this proceeding. No attempt was made to determine whether Orange Color would agree to refrain from selling the shoes at issue. Had Converse or its counsel contacted Orange Color directly, they would have learned that many of the key allegations in this law suit and in the ITC proceeding are simply wrong.

Based on the foregoing, Orange Color believes that Converse and its counsel did not conduct an adequate pre-suit investigation and they have informed Converse's counsel that if they continue to pursue this litigation, Orange Color will seek attorney's fees and appropriate sanctions under, *inter alia*, Rule 11, F.R.C.P.

II.  DISCOVERY PLAN

   A.  Scope of Discovery Required

   1.  Converse Statement:

Converse will require discovery on Orange Clubwear's alleged violations of Converse's Asserted Trademark, Orange Clubwear's intent, and Converse's claim for monetary and injunctive remedies. In particular, this discovery will include Orange Clubwear's use, promotion, and sales of accused products, including its knowledge of Converse's trademark. Converse will also require discovery about Orange Clubwear's corporate structure and supply chains, including its use/sales of the Demonia Deviant brand. Converse will require discovery

about Orange Clubwear's consumer demographics, market and distribution channels, pricing and costing, and alternative product designs.  Converse may also require discovery of non-parties regarding the distinctiveness of the Asserted Trademark; the exclusiveness of Converse's use of the Asserted Trademark; the non-functional nature of the Asserted Trademark; the existence of alternative, non-infringing designs; and/or the existence of confusion and associations in the marketplace. This case will also require expert discovery, including trademark surveys and expert reports on a variety of issues including protectability, liability (e.g., likelihood of confusion and dilution), and remedies.

    2.    <u>Orange Clubwear Statement:</u>

Discovery will also be required on any affirmative defenses and/or counterclaims raised by Orange Clubwear.

Orange Clubwear will require discovery on the history of Converse's procurement and enforcement of common law trademark rights, including the extent from 1917 to date to which it attempted to enforce its rights against third parties or refrained from enforcing its rights against third parties, and the extent to which it knowingly allowed third parties to make and sell "look-alike" shoes from 1917 to date. Orange Clubwear will seek discovery concerning Converse's acquisition of a U.S. registered trademark and the genesis and objectives of its recent campaign to enforce its trademark rights.  Orange Clubwear will also conduct discovery on the issue of whether its sales of Demonia Deviant brand sneakers created consumer confusion, and more generally, whether sales of the many "look-alike" shoes in the market-place have created confusion with the Converse Brand.  Orange Clubwear will require discovery from Converse concerning consumer demographics, evidence of brand distinctiveness and secondary meaning, evidence of consumer confusion, evidence concerning whether the alleged design has become generic, and evidence concerning whether the alleged trademark is functional or non-functional If the parties conduct damages discovery, Orange Clubwear will seek discovery concerning  any alleged loss of sales, profits or market sales as a result of Orange Color's alleged infringement, any license agreements between third parties and Converse for the production of "look-alike" shoes, and any economic analysis or valuation concerning the value of Converse's alleged common law and registered trademark.

    B.    <u>Phasing of Discovery</u>

The parties dispute whether discovery on monetary remedies should be bifurcated.

    1.    <u>Orange Clubwear Statement:</u>

Orange Clubwear believes that discovery on damages issues should be stayed, and that discovery should proceed only on issues of liability. Orange Clubwear believes that discovery on damages should be permitted only if Converse's claims survive dismissal on either a  motion to dismiss or summary judgment.. Discovery will be much more manageable and cost-effective it the parties first focus on issues of liability. The overlap between discovery on liability and damages issues is relatively minor, but the cost of conducting discovery on damages issues will be far greater than the cost of discovery on liability issues. Orange Color believes that the case will be resolved in its favor on all liability issues and that discovery on damages may never

become necessary. It would be wasteful and unproductive for the parties to conduct discovery on damages issues, at least until it is determined that the case will need to be tried by a jury.and cannot be adjudicated on a motion to dismiss or summary judgment. In this regard the experts required to address the main liability issue (likelihood of confusion) almost certainly not serve as experts on damages issues—conducting expert discovery on damages issues will be a complex, time-consuming, expensive task that will become unnecessary unless Converse prevails on liability issues.

Orange Clubwear is a small e-commerce company, without even a fraction of the resources available to its giant corporate adversary to litigate this case. While the cost of producing Orange Clubwear's damages information to Converse will be small, Orange Clubwear is concerned about the huge costs that will inevitably be associated with conducting discovery of documents and information in possession of a giant corporation such as Converse (and its affiliated parent, Nike). Discovery on the main liability issue---likelihood of confusion, will inevitably impose major costs on Orange Clubwear merely because of the size and scope of Converse's business, and it would impose a harsh burden on Orange Converse if it is also required prematurely to endure the costs of conducting damages discovery--costs-which may never be necessary of Orange Clubwear prevails on liability issues.

Converse argues that there is overlap in information, such as sales data, relevant to both liability and damages issues, but that overlap is relatively minor (such as sales data) Orange Clubwear does not dispute that the parties should exchange sales data during the liability phase—in fact Orange Clubwear has already voluntarily agreed to provide such information to facilitate settlement. However, if the case does not settle, the issue of damages requires a complex assessment of a wide variety of economic factors and market conditions. For example, consideration of Converse' s potential claim for lost profits requires analysis of Converse's accounting system for measuring and calculating its profits, including how it accounts for its costs, overhead, advertising and marketing expenses, manufacturing expenses, shipping expenses, taxes, labor and many other such variables. Likewise, if the measure of damages is a reasonable royalty, a complex array of factors must be considered, such as whether there are non-infringing alternatives in the market, the extent to which there are standard royalty rates in the industry, Converse's history of licensing agreements with third parties, third party license agreements and Converse's profits (and costs). Likewise, if Converse claims damages from price erosion or erosion of market share, the discovery (including expert discovery) concerning market conditions would be very burdensome and expensive for both parties. Only a small proportion of this detailed financial information is relevant to the likelihood of confusion issue— which will be the main issue in the liability phase of this case.

Converse asserts that if discovery on damages is stayed, the Court will be burdened with disputes on the scope of liability discovery. Not so. Orange Clubwear has no objection to producing sales information and other similar information relevant to both damages and liability issues. But the detailed economic information and supporting documentation relevant to damages analysis is, with only a few exceptions, irrelevant to liability issues. The line between information relevant to liability and damages is clear. In this regard, it is common in patent, trademark, copyright and other IP cases for courts to stay damages discovery, and there is no evidence to indicate the parties in these cases have more disputes regarding the scope of

discovery than in cases in which there is no stay. To the contrary, assuming the parties work together in good faith to resolve discovery issues, a stay of damages discovery is likely to significantly reduce the number of occasions on which the Court may be asked to resolve discovery disputes.

In the final analysis, moreover, we believe Converse's claims in this case are exceedingly weak. Converse has already imposed a severe economic burden on Orange Clubwear by wrongly naming it as a party in this suit and by bringing claims that border on being frivolous. Orange Clubwear should not be required to shoulder the burden of conducting damages discovery in the circumstances here.

2. <u>Converse Statement:</u>

Converse believes that there should not be any bifurcation of discovery related to monetary remedies as proposed by Orange Clubwear. Orange Clubwear's proposed bifurcation will result in duplicative discovery and the need to reopen depositions, causing an unnecessary burden to the parties and potential witnesses. There are several types of information, such as sales data, that relate to both liability and remedies. Orange Clubwear's proposal would cause uncertainty as to the scope of permissible discovery during the liability phase and will likely result in motion practice on the scope of discovery. Furthermore, Orange Clubwear provides no support as to how or why the cost of conducting discovery on issues related to monetary remedies will be far greater than on liability issues.

C. <u>Proposed Case Management Plan Schedule</u>

For the reasons set forth above, this is a relatively complex case requiring substantial fact, non-party, and expert discovery. In preparation for the upcoming Initial Status Conference on November 24, 2014, the parties attach as Exhibit 1, a proposed Case Management Plan using the form provided with the Court's October 15, 2014, Order, including a proposed schedule of deadlines in Attachment A. The parties propose that discovery should be conducted and completed according to the proposed schedule attached in Attachment A to the proposed Case Management Plan, and should be phased with fact discovery being completed first, followed by expert discovery, followed by dispositive motions. Orange Clubwear proposes that if discovery is bifurcated, additional time for discovery regarding monetary remedies would also be required.

As laid out in the proposed schedule, the parties agree that they will exchange Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) within three weeks after Orange Clubwear files its Answer to the Complaint. The parties anticipate that they will be able to complete discovery, both fact and expert discovery, within twelve months of the date that Orange Clubwear Answers the Complaint. The parties propose a deadline of September 18, 2015, for the completion of fact discovery, and December 23, 2015, for the completion of expert discovery, including the exchange of reports, rebuttal reports, and expert depositions.

The parties propose January 15, 2016, as the deadline to file dispositive motions.

Further to the parties' Rule 26(f), Fed. R. Civ. P., conference, the parties further agree to a plan for (1) electronically stored information ("ESI") and form of production; and (2)

November 19, 2014
Page 8

inadvertent production and clawback forth in paragraphs G-H, respectively, of the enclosed proposed Case Management Plan.

The parties have both been advised of their obligation to preserve relevant and discoverable documents and ESI, and have suspended any deletion/modification programs in connection with relevant documents, communications, and/or ESI.

III.  CONTEMPLATED MOTIONS

The parties do not contemplate any motions at this time.

IV.  REFERRAL TO MAGISTRATE JUDGE

The parties do not consent to referring the case to a magistrate judge for trial.

Respectfully submitted,

/s/Katherine Laatsch Fink                          /s/Maurice Ross

  Robert L. Powley (RP 7674)                    Maurice Ross
  James M. Gibson (JG 9234)                     Barton LLP
  Stephen M. Ankrom (SA 5375)                   420 Lexington Ave. - 18th Fl.
  POWLEY & GIBSON, P.C.                         New York, NY  10170
  304 Hudson Street – Suite 202                 (212) 687.6262
  New York, NY 10013                            mross@bartonesq.com
  Telephone: (212) 226-5054
  Facsimile: (212) 226-5085                     ***Attorney for Defendant, Orange***
  rlpowley@powleygibson.com                     ***Clubwear, Inc. d/b/a Demonia Deviant***
  jmgibson@powleygibson.com
  smankrom@powleygibson.com

  Christopher J. Renk (pro hac vice)
  Erik S. Maurer (pro hac vice)
  Michael J. Harris (pro hac vice)
  Katherine Laatsch Fink (pro hac vice)
  Audra C. Eidem Heinze (pro hac vice)
  Aaron P. Bowling (pro hac vice)
  BANNER & WITCOFF, LTD.
  10 S. Wacker Drive, Suite 3000
  Chicago, Illinois  60606
  Telephone: (312) 463-5000
  Facsimile: (312) 463-5001
  crenk@bannerwitcoff.com
  emaurer@bannerwitcoff.com
  mharris@bannerwitcoff.com

November 19, 2014
Page 9

   kfink@bannerwitcoff.com
   aheinze@bannerwitcoff.com
   abowling@bannerwitcoff.com

***Attorneys for Plaintiff, Converse Inc.***


CC: All counsel of record